UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| FREIDA LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  3:14-cv-01587-SGC |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Freida Lewis, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits.  Ms. Lewis timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 11).  For the reasons that follow, the decision of the Commissioner will be affirmed.

**I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY**

Ms. Lewis's past work experience includes employment as a medical records clerk and realtor.  (R. 28).  Ms. Lewis claims she became unable to work on April 1, 2010, due to pain in her arms, neck, and back.  (R. 22, 51).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is performing "substantial gainful activity."   20 C.F.R. §

404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops.  *Id*.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. §§ pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, he or she is not disabled.  *Id.*

Here, applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Ms. Lewis had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 24). At step two, the ALJ found Ms. Lewis's degenerative disc disease ("DDD") and right carpal tunnel syndrome constituted severe impairments. (R. 24-25). However, the ALJ found Ms. Lewis's mental impairments were not severe because her medically determinable impairments of anxiety and depression did not cause more than mild limitation in her ability to work. (R. 25).

At step three, the ALJ found Ms. Lewis did not have an impairment or combination of impairments meeting or medically equal to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26). Specifically, the ALJ determined Ms. Lewis failed to satisfy the listing requirements for disorders of the spine. (*Id.*). Before proceeding to step four, the ALJ determined Ms. Lewis retained the RFC to perform the full range of light work. (R. 26-28). In reaching this conclusion, the ALJ considered Ms. Lewis's symptoms, the medical record, and opinion evidence. Regarding Ms. Lewis's symptoms, the ALJ found the claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but found her testimony regarding the intensity, persistence, and limiting effects of her symptoms to be less than entirely credible. (R. 27).

At step four, the ALJ determined Ms. Lewis was able to perform her past relevant work as a medical records clerk and realtor. (R. 28). Accordingly, the ALJ found Ms. Lewis was not disabled at any time through the date of decision. (*Id.*). Because of this conclusion, the ALJ did not proceed to step five of the sequential analysis. This decision became the final decision of the Commissioner when the Appeals Counsel denied Ms. Lewis's request for review.

Ms. Lewis appealed to this court on August 14, 2014 (Doc. 1), and subsequently filed a brief in support of her appeal (Doc. 8).  The Commissioner responded (Doc. 9), and all deadlines for submitting briefs have passed.  Accordingly, this matter is ripe for adjudication.

## II. STANDARD OF REVIEW

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal

analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**III.   DISCUSSION**

On appeal, Ms. Lewis argues the ALJ misapplied the "pain standard" when determining her RFC.  (Doc. 8 at 2-3).  Specifically, Ms. Lewis contends the ALJ did not properly consider the impact of her allegations of pain relating to both her degenerative disc disease and carpal tunnel syndrome.  Ms. Lewis also contends the ALJ erred during the evidentiary hearing by failing to ask the vocational expert about the limiting effects of Ms. Lewis's pain.

When a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies.  *See also Dyer,* 395 F.3d at 1210.  The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*  (quoting *Holt*, 921 F.2d at 1223).  Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so.  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62).  "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.  In determining credibility an ALJ may consider objective medical evidence and a claimant's reported daily activities, amongst other things.   20 C.F.R. § 416.929(c).

Here, the ALJ found Ms. Lewis's medically determinable allegations could reasonably be expected to cause the alleged symptoms but that Ms. Lewis's statements concerning the severity of her symptoms were not credible. (R. 27). In making this determination, the ALJ considered Ms. Lewis's testimony, medical records, and the opinion evidence of Dr. M. Clarke Woodfin, Jr., the Consultative Medical Examiner.

First, the ALJ recounted aspects of Ms. Lewis's testimony regarding her limitations. Ms. Lewis testified that her chronic pain and dysfunction in her arms, neck, and back came on gradually and eventually prevented her from working. (R. 27). Ms. Lewis testified that she spends most days sitting with a heating pad on her neck and back, which helps with her neck pain. (*Id.*). Ms. Lewis testified she generally stays home and does "'very little' housework and 'some' cooking." (*Id.*). Ms. Lewis also testified that her carpal tunnel syndrome causes pain, tingling, numbness, and dysfunction in both hands, which is worse on the right. (*Id.*). Due to the carpal tunnel and DDD symptoms, Ms. Lewis testified she cannot apply makeup, fix her hair, or manipulate objects without dropping and breaking them. (*Id.*). Ms. Lewis also testified that she cannot perform many activities outside the home or complete household tasks due to pain, which causes her to lose concentration after twenty (20) minutes. (*Id.*).

Regarding treatment, Ms. Lewis testified that she takes Lorcet and Neurontin for pain, as well as arthritis medication and Celexa. (R. 27). Celexa treats depression that Ms. Lewis experiences due to her inability to work or engage in social activities. (R. 27). Ms. Lewis also testified that doctors stated she would need two surgeries to treat her DDD. The first surgery would focus on her neck, while the later surgery would focus on her lumbar spine. (*Id.*). Ms. Lewis testified that she was scared to have the neck surgery because a doctor told her there was a sixty percent (60%) chance the surgery would paralyze her. (*Id.*). Ms. Lewis also expressed

hesitance to have neck surgery due to concerns about the monetary costs. (*Id.*). Ms. Lewis stated that she was supposed to schedule the surgery at some point after the hearing, but the ALJ noted she had not had further contact with her physician regarding the neck surgery. (*Id.*). When the ALJ questioned Ms. Lewis regarding whether her doctors advised her to stop smoking so that she could properly heal from surgery, Ms. Lewis responded that she was instructed to "slow down." Ms. Lewis stated that she was not able to quit smoking but had cut back to a half pack per day. (*Id.*).

The ALJ concluded Ms. Lewis's medical records did not support the intensity of the symptoms she described related to her back pain. In particular, the ALJ relied on the consultative examination of Dr. Woodfin, who found that Ms. Lewis: (1) experienced no negative effects with "speech and hearing, travel, and dexterity;" (2) stood well on either leg alone; (3) ably performed both tandem and toe and heel walking; (4) had no cyanosis, clubbing, edema, deformity, stasis, or varicosity; (5) could sit, stand, and walk frequently; (6) sat for twenty minutes without getting up and moving around; (7) had an erect gait without limp, spasticity, or ataxia; (8) used no assistive device; (9) sat down and stood up in a normal fashion, although slowly; (10) moved around the room without limitation; and (11) got on the examining table without difficulty. (R. 28). The ALJ noted that Dr. Woodfin found Ms. Lewis gave good effort, but "required much encouragement" and opined that her "motivation may be deficient." (*Id.*). Dr. Woodfin concluded that Ms. Lewis could lift and carry ten (10) pounds occasionally, but the ALJ found, based on questions about Ms. Lewis's motivation, that she could lift and carry ten pounds frequently and twenty pounds occasionally. (*Id.*).

Regarding carpal tunnel syndrome, the ALJ concluded the medical record did not support a finding that Ms. Lewis is limited in her ability to grasp, hold, and turn objects, as required to

perform light work. The ALJ noted that Ms. Lewis was able to smoke cigarettes, which involves manipulation of small objects. (R. 28).

A medical diagnosis of physical impairments does not reveal their limiting impact on a disability claimant's ability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213, n.6 (11th Cir. 2005). Functional limitations caused by an impairment are determinative of its severity for purposes of assessing disability. *Id.*; *see* 20 C.F. R. § 404.1545(a). Here, while there are numerous medical records diagnosing Ms. Lewis's physical impairments, Dr. Woodfin's consultative examination is the only opinion of record by a physician addressing the physical limitations Ms. Lewis experienced as a result. (R. 209-212). The ALJ's opinion accurately recounts Dr. Woodfin's findings. (*See* R. 28). Additionally, the ALJ accurately summarized medical records reflecting Ms. Lewis's pursuit of conservative treatment of symptoms related to her DDD, and she had not scheduled the first of her recommended surgeries. (R. 25). *See Wolfe v. Chater*, 86 F. 3d 1072, 1078 (11th Cir. 1996) (conservative treatment may constitute substantial evidence to discredit testimony regarding severity of symptoms). Finally, the ALJ noted that Ms. Lewis's reports regarding her daily activities were inconsistent with her testimony concerning the severity of her symptoms. Regarding DDD symptoms, the ALJ relied on Ms. Lewis's statements that she did perform some housework and cooking. (R. 27). Regarding carpal tunnel, the ALJ found Ms. Lewis's ability to smoke cigarettes undermined her testimony regarding the severity of her carpal tunnel-related symptoms. (R. 28).

As described above, the ALJ clearly articulated reasons for finding Ms. Lewis's testimony regarding her symptoms to be less than fully credible. *See Foote*, 67 F.3d at 1562. Moreover, the ALJ's determination that Ms. Lewis's testimony was less than fully credible is supported by substantial evidence in the form of opinion testimony, reports of daily living

activities, and medical records. *See id.* Accordingly, substantial evidence supports the ALJ's conclusion that Ms. Lewis retained the ability to perform light work. While the ALJ neither explicitly used the words "pain standard" nor cited *Holt v. Sullivan*, her opinion cites the relevant regulation, 20 C.F.R. § 404.1529, and Social Security Rulings and tracks the pain standard's framework and operative language. (R. 27). The Eleventh Circuit has held that such an analysis can satisfy the pain standard's requirements. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-1226 (11th Cir. 2002)

Finally, Ms. Lewis argues the ALJ erred during the evidentiary hearing by failing to question the vocational expert regarding the impact of pain on Ms. Lewis's ability to work. (Doc. 8 at 6). However, because the ALJ found at step four that Ms. Lewis was capable of returning to her past relevant work, a vocational expert's testimony was not required. *See Locas v. Sullivan*, 918 F.2d 1567, 1573, n.2 (11th Cir. 1990); *Schnoor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Because Ms. Lewis did not carry her burden of proving she was unable to perform past relevant work, the ALJ did not err in failing to question the vocational expert regarding Ms. Lewis's ability to perform other work.

## IV.   CONCLUSION

Upon review of the administrative record and considering all of Ms. Lewis's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 30th day of March, 2016.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE